EASTERN DIS.
July, 1841.

ZACHARIE & CO.
vs.
ROGERS
& HARRISON.

---

## ZACHARIE & CO. vs. ROGERS & HARRISON.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW ORLEANS.

Where the owner of property places it in the hands of a third person, who makes advances on it by drawing a bill, the drawee and consignee cannot appropriate it to the payment of his debt against the owner, until the advance is paid.

Drawees, who are under no obligations to accept a draft, bind themselves to pay it, when they receive the goods or property on which it is drawn.

The acceptance of a draft, merely by the receipt of the bill of lading, and the property on which it is drawn, completes the obligation of the drawee to pay it.

This is an action to recover the balance of $2095,99 due on an account made up from a bill of exchange drawn on a ship-

ment of sugar, which was dishonored by the defendants, by being protested for non-acceptance; although afterwards paid in part by them as drawees. The plaintiffs claim the balance with the expenses, interest and costs.

EASTERN DIS.
July, 1841.

ZACHARIE & CO.
vs.
ROGERS
& HARRISON.

The defendants pleaded the general issue.

The facts of the case are briefly these. In 1827–8, the plaintiffs and one J. B. Moussier made an arrangement, by which the former were to make some advances to the latter on his sugar crop. This was done by shipping the sugar to the defendants in Richmond, Virginia, and drawing a bill on them to be met by the proceeds. The bill was drawn at New Orleans on the 20th February, 1828, at 60 days sight, for $11,000, and sold to the U. S. Bank, and forwarded to Richmond for acceptance. The day before the date of the bill of exchange, the plaintiffs took a bill of lading for 250 hogsheads of sugar, shipped by them, but " for account of J. B. Moussier," and consigned to the defendants, of which advice was given to the latter. The defendants, in their letter to plaintiffs, dated the 14th March, 1828, in reply, say, " we have been several days in receipt of your favor of the 8th ultimo, and now acknowledge the receipt of your letter of advice of draft upon us for $11,000, which draft has been presented, and we are sorry to say, under the circumstances, we have been compelled to allow it to be noted for non-acceptance. Two mails have now arrived and no *invoice and bill of lading have appeared*. We fear you may think our course in this transaction has been rather too strict, but if you think dispassionately of the case, we think you cannot condemn us, as the bill of lading ought to have been forwarded as soon at least as the draft; and so many accidents have occurred in our correspondence with Mr. Moussier that we are afraid to put ourselves in the power of any uncertainty ;"—" you will perhaps say that our respect for your signature ought to have induced us to accept and look to you for indemnity in case any accident; but the noting of a draft is not like a protest; and of which we have given a full explanation to the holder, at this office ; assuring him that we

EASTERN DIS. *July*, 1841.

ZACHARIE & CO.
*vs.*
ROGERS
& HARRISON.

are sure that unless some accident has occurred which you did not foresee ; *that the transaction is entirely regular, and that if, as we expect, we receive a bill of lading for the amount of property intended to be shipped us, we shall forthwith accept your draft, the refusal* of which has given us great pain, but we trust will not be complained of by you."

On the next day, the 15th March, the defendants wrote again as follows : "Since we wrote you yesterday the 'Aspasia' has arrived at our wharf, and we have made a partial examination of the sugar, and though the quality appears fair and good, yet it does not justify Mr. Moussier's authorizing so heavy a draft on it, and will not, we are convinced, pay the *amount due us, and your draft also ;* under these circumstances we are compelled to allow the bill for $11,000, to remain under note for protest, until we can ascertain whether we can, with safety accept it. We are sorry it had not been for 7 or 8000 ; under which circumstances we would with pleasure have accepted it. Fifty hogsheads are advertised for sale on Monday, and should the quality and price justify us in accepting your draft, which will make an advance of $16,000, we shall certainly protect you ; and let what will happen, you may rely on our making the best of it, but our market is so completely glutted that we can hardly expect to get a price sufficient for it to cover your draft."

The defendants proceeded to sell the sugar and rendered an account of sales, which after deducting the amount of Mr. Moussier's account, previously owing to them, left a balance, after payment of charges, of $9,100, which was applied to plaintiffs' draft. This still left a final balance due on the draft of $1900, besides interest and expenses, which are the object of the present suit.

The parish judge was of opinion the defendants were not liable, and from judgment in their favor, the plaintiffs appealed.

*Strawbridge*, for the plaintiffs and appellants.

*Grymes*, for the defendants.

*Martin, J.* delivered the opinion of the court.

The plaintiffs allege that they advanced a large sum of money to one Moussier, for which they were to be re-imbursed out of a large parcel of sugars, to be shipped to and sold by the defendants; that they received the consignment of sugar and assumed to pay the plaintiffs' drafts thereon; but in violation of this engagement they only paid a part of said draft, leaving a balance of $2,095,99, which they unjustly detained. The defendants pleaded the general issue. There was judgment for the defendants and the plaintiffs appealed.

The facts of the case appear to be these. On the 14th March, 1828, the defendants advised the plaintiffs that they had been compelled to note their draft for $11,000, for protest; because neither the invoice of sugars or bill of lading had as yet been received; assuring them however that on the arrival of those documents the draft would be accepted.

The bill of lading and invoice of sugars themselves soon afterwards arrived, and were received by the defendants, who paid from their proceeds in part discharge of said draft the sum of $9,100. The plaintiffs claim the balance with interest.

The counsel for the plaintiffs contends that the defendants' letter of the 14th March, 1828, contains a conditional accceptance, which became absolute on the arrival of the invoice and bill of lading; and if necessary still more so, on the arrival of the sugar, and the disposal of it by the defendants.

The defence of the appellees, which was sustained by the parish court, is, first, that the plaintiffs were merely the agents of J. B. Moussier, who was the owner, and for whose account the sugar was shipped.

2. That the defendants were under no obligation to accept the plaintiffs' draft for $11,000.

3. That having paid all the funds they had in their hands belonging to Moussier, they were discharged; having correctly charged him with the balance which he owed them.

EASTERN DIS.
July, 1841.

ZACHARIE & CO.
vs.
ROGERS
& HARRISON.

EASTERN DIS.  I. The parish court, in our opinion, erred. Moussier, the
*July*, 1841.  owner of the sugar, had placed it in the hands of the plaintiffs
ZACHARIE & CO.  who were to be paid for their advances to him, out of its pro-
*vs.*  ceeds; and for that purpose consigned it to the defendants for
ROGERS  sale. The draft in question was drawn on this sugar under
& HARRISON.
             the arrangement made with Moussier.
Where the
owner of pro-
perty places it   II. It is true the defendants were under no obligation to ac-
in the hands of
a third person  cept the plaintiffs' draft, until they bound themselves to do so,
who makes ad-
vances on it by  when they received the invoice of the sugars and bill of la-
drawing a bill,
the drawee and  ding.
consignee can-
not appropriate   III. If the defendants had a claim against Moussier, to which
it to the pay-
ment of his debt  they thought the proceeds of the sugar ought to be first applied,
against the own-
er, until the ad-  they should have informed the plaintiffs of it, and refrained
vance is paid.
             from a promise to accept the draft. The acceptance of the
Drawees, who
are under no ob-  draft by the receipt of the bill of lading and the invoice of the
ligations to ac-
cept a draft,  sugars, completed the obligation of the defendants to pay it.
bind themselves
to pay it, when  The plea of prescription cannot avail defendants, as this is not
they receive the  a suit on a bill of exchange.
goods or pro-
perty on which   It is therefore ordered, adjudged and decreed, that the judg-
it is drawn.
             ment of the Parish Court be annulled, avoided and reversed;
The accept-
ance of a draft,  and proceeding to give such judgment as in our opinion ought
merely by the
receipt of the  to have been rendered in the court below: It is ordered, ad-
bill of lading and
the property on  judged and decreed, that the plaintiffs do recover from the
which it is
drawn, com-  defendants, Rogers & Harrison, the sum of nineteen hundred
pletes the obli-
gation of the  dollars, with legal interest from judicial demand, with costs in
drawee to pay it.  both courts.